IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JESSIE L. PEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 4:09CV3206 |
| v. | ) | |
| | ) | |
| DAVID P. VIENS II, and COVENANT | ) | |
| TRANSPORT, INC., | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on the various pretrial motions filed by the respective parties.

SUMMARY OF THE ISSUES

Plaintiff Jessie L. Perez ("Perez") has filed the following motions:

- Motion in Limine to exclude: (1) evidence of an altercation that occurred in 2006 during which Perez suffered injuries; (2) evidence Perez suffered from depression between 1995 and 1998 due to job dissatisfaction; (3) evidence Perez suffered another episode of depression in 2001 after bypass surgery; (4) evidence his depressive episodes were treated successfully with Zoloft; and (5) evidence of Perez's retirement benefits. Filing No. 103.

- Objection to Supplement to the Opinions of Experts Hayes and Erickson & Motion in Limine to exclude as untimely any reference to the supplemental or rebuttal expert report provided to Perez on April 28, 2011. Filing No. 113.

- Motion in Limine to exclude certain portions of the report and testimony of Defendants' Rule 35 expert, James M. Horrocks, M.D. Filing No. 127.

Defendants Covenant Transport and David P. Viens, II have filed the following motion:

- Motion in Limine seeking to exclude: (1) testimony from Jake DeNell; (2) evidence of injuries sustained by Jacqualyn Perez and the settlement of her claim against Defendants; (3) evidence defendant Covenant Transport paid the costs to repair Jessie Perez's car; and (4) evidence of offers by Covenant Transport to settle Jessie Perez's claim. Filing No. 115.

## A.      Plaintiffs Motions in Limine

### 1.      Evidence of the 2006 altercation.

Perez seeks to exclude evidence he was involved in an altercation in 2006 which resulted in substantial physical injuries, including at least one complaint by Perez of back and neck pain. Perez argues his nonspecific complaint of neck and back pain is not relevant and admission of evidence regarding the circumstances surrounding the altercation would be unduly prejudicial. Defendants argue the recent complaint of neck and back pain is relevant and can be presented without discussing the facts surrounding the assault on Perez.

The court agrees with Defendants. Under Fed. R. Evid. 401, Perez's recent complaint of, and treatment for, back and neck pain is relevant and evidence regarding the injuries will be allowed. However, pursuant to Rule 403, the circumstances surrounding the altercation would be unduly prejudicial and are not relevant to the underlying injuries and treatment. Thus, defendants will not be allowed to present any evidence beyond the fact that Perez suffered injuries in 2006 and made a complaint of neck and back pain at that time.

### 2.     Evidence of Perez's depression and complaints of job dissatisfaction.

Perez argues any evidence regarding his past bouts of depression are inadmissible due to lack of relevance and undue prejudice because the majority of his symptoms occurred from 1995 to 1998 and his most recent occurrence of depression was in 2001. Defendants argue that because Perez is now complaining of depression as a result of the underlying accident in this case, they are entitled to explore his history of depression and any methods whereby it was successfully treated.

Like his history of back and neck pain, the evidence of Perez's depression is relevant and will not create undue prejudice. Likewise, the fact that Perez has in the past responded well to certain forms of treatment is also relevant. To the extent Perez seeks to exclude this information, his motion is denied. However, any evidence in the treatment notes or otherwise that refer to Perez's dissatisfaction with his job will not be admitted. Any such comments, the last of which was apparently made in 1998, are too remote in time to provide much, if any, relevance and would be unduly prejudicial under Rule 403.

### 3.     Evidence of Perez's retirement benefits.

Perez seeks to exclude any evidence of his retirement benefits. Specifically, he seeks to preclude defendants from presenting evidence that he could retire at age 60 and receive his full pension amount. Defendants argue that the evidence of retirement benefits is not precluded by the collateral source rule and that it is necessary to rebut any assertion made by Perez that he intended to work until he was 70 years old.

"It is familiar law that a plaintiff's collateral sources of compensation cannot be inquired into as part of a defendant's case, because of the danger that the jury may be

3

inclined to find no liability, or to reduce a damage award, when it learns that plaintiff's loss is entirely or partially covered." Moses v. Union Pacific R.R., 64 F.3d 413, 416 (8th Cir. 1995) (citing Eichel v. New York Central R. Co., 375 U.S. 253, 255 (1963)). Although the payments at issue in this case may not be considered traditional collateral source assets – that is, they are not available to Perez solely to help compensate him because of his disability – the admission of their existence and amount would be prejudicial and of limited, or no, relevance. The danger with the admission of these types of income streams is that it may prejudice the jury regarding the amount of damages, if any, to be awarded. This danger outweighs any relevance as to how one of Perez's many employment benefits, viewed in a vacuum, might impact his decision to work until age 70, rather than retiring at age 60. Thus, defendants' motion will be denied as to the evidence regarding Perez's retirement benefits.

**4. Supplemental report of experts Mark S. Erickson and Wilson C. Hayes.**

Perez argues defendants should be prohibited from offering the supplemental expert report of Erickson and Hayes. He asserts this report was prepared specifically to rebut the rebuttal reports of Perez's own expert. As such, Perez contends the report should have been provided to him within thirty (30) days of November 23, 2011 – the date Perez filed his expert's rebuttal report of the original Erickson and Hayes report. See Fed. R. Civ. P. 26(a)(2). Defendants counter that the report is best characterized as supplementing their original expert report, and under Fed. R. Civ P. 26(e)(2) and (a)(3) only had to be provided 30 days before trial. Thus, the report was timely. In the alternative, Defendants argue that even if the report was provided out of time, Perez will suffer no prejudice if the court allows its admission.

The court agrees with Perez that the so-called "supplemental" report was produced to contradict the rebuttal report produced by Perez's own expert and should have been

produced no later than December 23, 2011.[1]  However, the court is not required to exclude the report solely because it was not timely filed.  The court may consider a number of factors in determining the appropriate sanction, including any prejudice to the opposing party and "the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony."  Sellers v. Mineta, 350 F.3d 706, 711-12 (8th Cir. 2003).

In this case, Perez does not claim he will suffer from prejudice if the report in question is allowed into evidence, nor does the court believe Perez will be prejudiced by the admission of the rebuttal report.  Although disclosed after the required deadline, the report was provided in time for Perez to depose Hayes and Erickson prior to the trial. Moreover, the content of the report, although important, appears to be nothing more than an extension of the predictable disagreement between experts.  Finding no evidence of potential prejudice, the court will deny Perez's motion to exclude the supplemental report of Hayes and Erickson.

### 5.     Report and testimony of James M. Horrocks, M.D.

Perez seeks to exclude portions of the Rule 35 report prepared by Dr. Horrocks, as well as some of Dr. Horrocks anticipated testimony.  Specifically, Perez seeks to exclude Dr. Horrocks' opinion regarding whether Perez's back surgery performed by Dr. Turner was appropriate and to exclude his testimony regarding Perez's ability to return to work as a locomotive engineer because, Perez alleges, Dr. Horrocks is not qualified to opine on either

---

[1] The Hayes and Erickson rebuttal reports were originally completed by December 21, 2010, providing strong indication they were intended to be rebuttal reports.  Defendants did not provide these additional reports to Perez until April 28, 2011.

subject.[2] Defendants argue that Dr. Horrocks meets the minimum threshold requirement for expert testimony and that the issues raised by Perez are best left for cross examination.

### a. Perez's back surgery.

As to Defendants' claim that the back surgery performed by Dr. Turner was unnecessary, Perez's motion in limine will be granted. As an initial matter, as Perez notes in his reply brief, the evidence is of limited or no relevance under Rule 401 and would be unduly prejudicial under Rule 403. See [Reese v. AMF-Whitely, 420 F.Supp. 985, 988-89 (D. Neb. 1976)](tortfeasor responsible for all consequences flowing from the natural course of events which may include negligent medical treatment). Morever, the court will not allow Defendants to make an end-run around the expert disclosure and the expert deadline requirements of Rule 26 , by allowing Defendants to present expert testimony unrelated to the Defendants stated need for the Rule 35 exam – that is, the exam was allowed to provide an update on Perez's condition, and nothing more. See Filing No. 61, p. 4.

### b. Perez's ability to work as an engineer.

The court will allow Dr. Horrocks to opine about Perez's ability to work as a locomotive engineer. The court agrees with Defendants that Dr. Horrocks is sufficiently qualified to testify on the disputed topics.

---

[2] Perez also argues any opinion Dr. Horrocks offers on Perez's history of mental health episodes and the altercation in 2006 should be excluded. The court has addressed those issues above. Perez also argues Dr. Horrocks should be prevented from opining about whether the underlying accident caused Perez's injuries. Defendants do not assert Dr. Horrocks will be testifying about causation and his report does not address the topic, therefore, Perez's argument is moot.

> Rule 702 only requires that an expert possess 'knowledge, skill, experience, training, or education' sufficient to 'assist' the trier of fact, which is 'satisfied where expert testimony advances the trier of fact's understanding to any degree.' 29 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6265 (1997). "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." Id.; see also Lauria v. Nat'l R.R. Passenger Corp., 145 F.3d 593, 598 (3d Cir.1998) (holding trial court abused its discretion by excluding testimony simply because the trial court did not deem proposed expert to be the best qualified or because proposed expert did not have the specialization that the trial court considered most appropriate). However, Rule 702 does require that "the area of the witness's competence matches the subject matter of the witness's testimony." WRIGHT & GOLD, supra § 6265. Most courts have held that a physician with general knowledge may testify regarding medical issues that a specialist might treat in a clinical setting. Id.

Robinson v. Geico General Insurance Co., 447 F.3d 1096, 1100-01 (8th Cir. 2006).

Based on Dr. Horrocks status as a licensed physician, his extensive background in occupational health, and his experience as a consulting physician for Union Pacific Railroad, he is qualified to render an opinion regarding whether Perez is fit to continue his work for the railroad. However, as Defendants acknowledge, Dr. Horrocks will be subject to cross examination, during which Perez may point to any shortcomings in Dr. Horrocks' qualifications and report.

B.   **Defendants' Motion in Limine**.

   1.   **The testimony of Jake DeNell.**

Defendant argues any testimony of Jake DeNell should be excluded as improper expert testimony under Fed. R. Evid. 702. Defendants assert that because DeNell performed a functional capacity evaluation ("FCE") and did not treat Perez, any testimony he gives inherently requires technical expertise. Perez counters that DeNell can testify as to his observations as a fact witness and will not render any opinions based on his expertise. That is, he can testify as to Perez's demeanor and his opinion as to Perez's level of effort.

The overarching goal is to reach a just result, which requires providing the jury with a clear and complete picture of Perez's abilities and disabilities. With that goal in mind, DeNell will be allowed to testify as a fact witness as to his observations of Perez's performance during the FCE. Perez insists DeNell's testimony will be limited to observations of Perez's effort during the FCE and his general demeanor during the test, however he will not offer "opinions based upon any application of specialized knowledge." Filing No. 128, p. 2. Based on these representations, **and not to exceed these representations**, DeNell's limited testimony will be allowed.

   2.   **Evidence of injuries to Jacqualyn Perez.**

Defendants seek to exclude any evidence regarding injuries Jacqualyn Perez sustained in the underlying accident and any evidence of her settlement with Defendants. They assert any testimony regarding Jacqualyn Perez's injuries is not relevant to the injuries suffered by Jessie Perez and would be highly prejudicial. Moreover, they argue, any evidence of the settlement is precluded by Fed. R. Evid. 408. Plaintiff argues information regarding

8

Jacqualyn Perez's injuries is relevant because her injuries indicate the severity of the crash. Plaintiff also suggests the settlement agreement is not controlled by Rule 408 because Defendants are not disputing liability and are only disputing the amount of damages.

The court agrees that evidence of Jacqualyn Perez's injuries is not relevant in determining the severity of Jessie Perez's injuries from the accident and would be unduly prejudicial. The court will not permit a "trial within a trial" to determine causation issues such as whether the impact she sustained in the accident is equivalent to the impact the plaintiff sustained, or medical causation (including any "egg-shell plaintiff" issues) surrounding the extent of Jacqualyn Perez's injuries. Accordingly, Defendants' motion in limine is granted as to any evidence of injuries sustained by Jacqualyn Perez.

Likewise the evidence of the settlement agreement is excluded. Not only are settlement agreements excluded under Rule 408,[3] but the terms of the settlement agreement are simply not relevant and if admitted would be unduly prejudicial to Defendants. Defendants have admitted negligence, and the amount paid to Jacqualyn Perez has no value in determining the nature of Jessie Perez's injuries or what amount, if any, is owed to him.

### 3. Evidence of damage to Perez's car and the payment for the damages by Covenant Transport.

Defendants argue that Perez should be prohibited from introducing evidence that Covenant Transport paid to repair the damage to Perez's car that occurred as a result of the

---

[3] Rule 408 applies not only to settlements between the parties, but also to settlement agreements between one of the parties to the suit and a non-party. See, e.g., McHann v. Firestone Tire and Rubber Co., 713 F.2d 161, 166-67 (5th Cir. 1983) (precluding evidence of defendant's settlement agreements with a former plaintiff in the suit).

accident under Rule 408 and because the evidence is not relevant and would be unduly prejudicial. Perez counters that the information is necessary to rebut Defendants' claim that the accident was a "low speed" collision. Perez asserts the payment does not fall under Rule 408 because Covenant paid the repair costs without negotiation or further discussion.

The court will not permit Perez to enter evidence showing Covenant Transport paid for the repairs to Perez's car or the amount that was paid to have the car restored. The information regarding Covenant Transport's payment of vehicle damages is not relevant under Rule 401. Defendants have admitted negligence, thus the fact that Covenant agreed to pay to repair the damaged vehicle has no probative value in this case. Moreover, the actual amount paid by Covenant may be prejudicial because, standing on its own, may or may not be an accurate reflection of the damage actually done to the car. However, Perez may introduce evidence providing information about the damage actually done to his car, such as photographs, and a description of the damage, so long as proper foundation is provided, in order to provide evidence regarding the severity of the collision.

### 4.     **Covenant's offers to settle Plaintiff's personal injury claim.**

Defendants' also seek to exclude any evidence Covenant sought to settle personal injury claims with Jessie Perez under Rule 408. Perez argues Rule 408 is inapplicable because the liability is not at issue in this case and because the statements by Covenant were not offers or negotiations, but are better characterized as "invitations to enter settlement negotiations."

By its terms, Rule 408 applies to settlement negotiations when offered to prove [the]. . . amount of a claim." Fed. R. Evid. 408. The types of discussions at issue in this case are expressly covered by Rule 408 and are, therefore, prohibited. Accordingly, Perez cannot

introduce any evidence about Covenant Transport's initial overtures to Perez to settle the case.

    IT IS ORDERED,

1. The parties' motions in limine, (filing nos. 103, 113, 115, & 127) are granted and denied as discussed above in this memorandum and order.

2. Defendants' motions to file briefs and indexes of evidence with restricted access (filing no. 114 & 122) are granted.

DATED this 14th day of June, 2011.

    BY THE COURT:

    *s/ Cheryl R. Zwart*

    United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.